UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOHN McCLINTOCK,

       Plaintiff,

v.

T. COOPER, et al.,

       Defendants.

No.  2: 18-cv-0560 JAM KJN P

ORDER AND FINDINGS AND RECOMMENDATIONS

## I.  Introduction

Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant to 42 U.S.C. § 1983.  Pending before the court is defendants' summary judgment motion.  (ECF No. 124.)  Defendants move for summary judgment on the merits of plaintiff's claims and also on the grounds that plaintiff failed to exhaust administrative remedies.

For the reasons stated herein, the undersigned recommends that defendants' motion for summary judgment be granted, except for the claim that plaintiff failed to exhaust claim two.

## II.  Request for Reconsideration

In his opposition to defendants' summary judgment motion, filed May 10, 2022, plaintiff argues that the court wrongly dismissed claim one.  (ECF No. 133 at 2-9.)  The undersigned construes this argument as a request for reconsideration of the order dismissing claim one.  For the reasons stated herein, plaintiff's request for reconsideration should be denied.

1

*Legal Standard*

"A motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the law." Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co., 571 F.3d 873, 880 (9th Cir. 2009) (internal quotation marks and citations omitted), and "[a] party seeking reconsideration must show more than a disagreement with the Court's decision, and recapitulation…" of that which was already considered by the Court in rendering its decision, U.S. v. Westlands Water Dist., 134 F.Supp.2d 1111, 1131 (E.D. Cal. 2001) (internal quotation marks and citations omitted).  Additionally, pursuant to this Court's Local Rules, when filing a motion for reconsideration of an order, a party must show "what new or different facts or circumstances are claimed to exist which did not exist or were not shown upon such prior motion, or what other grounds exist for the motion."  Local Rule 230(j).

*Discussion*

On April 30, 2019, the undersigned ordered service of claims 2-5 of the second amended complaint.  (ECF No. 14.)  On April 30, 2019, the undersigned also recommended that claim one raised in the second amended complaint be dismissed.  (ECF Nos. 15, 14.)  Plaintiff did not file objections.  On July 11, 2019, the Honorable John A. Mendez adopted the April 30, 2019 findings and recommendations.  (ECF No. 19.)

In claim one, plaintiff alleged that on May 18, 2017, plaintiff left his legal property in the locked chaplain's office.  (ECF No. 14 at 1.)  When plaintiff returned to the chaplain's office later that day, he discovered that his legal property was gone.  (Id.)  Plaintiff alleged that defendant Cooper took his legal property.  (Id.)  Plaintiff alleged that he filed a grievance regarding his missing legal property and sent a letter to internal affairs.  (Id. at 2.)  Plaintiff alleged that during the year he exhausted his administrative remedies regarding his missing legal property, defendants Cooper, Armenta, Wheeler, J. Cantu, L. Cantu and Winkler retaliated against him for pursuing his administrative remedies by locking inmates in their cells at the time of religious services, conducting excessive cell searches of plaintiff's cell and tampering with plaintiff's mail.  (Id.)

1    The undersigned recommended that claim one be dismissed as vague and conclusory.  (Id.

2    at 2-3.)  Plaintiff did not allege when the alleged acts of retaliation occurred.  (Id. at 2.)  Plaintiff

3    also did not allege which defendants engaged in the retaliatory actions.  (Id.)  Plaintiff also did not

4    allege how defendants' denial of religious services to all inmates was intended as retaliation

5    against plaintiff.  (Id. at 2-3.)

6    Plaintiff also named Warden Lizarraga as a defendant in claim one.  (Id. at 2.)  The

7    undersigned recommended the dismissal of defendant Warden Lizarraga because plaintiff failed

8    to plead sufficient facts supporting a retaliation claim against this defendant.  (Id. at 2-3.)

9    In the request for reconsideration, plaintiff again alleges that defendant Cooper took

10   plaintiff's legal property from the Chaplain's Office.  (ECF No. 133 at 2-3.)  Plaintiff alleges that

11   C. White destroyed a grievance plaintiff filed regarding his missing legal property.  (Id. at 3.)

12   Plaintiff alleges that B. McCloughan interviewed plaintiff regarding his missing legal property

13   but made no mention of the break-in or theft in his report.  (Id.)  Plaintiff alleges that the "named

14   state actors acted with malice" to interfere with plaintiff's exhaustion of administrative remedies.

15   (Id.)  C. White and B. McCoughan were not named as defendants in the second amended

16   complaint.

17   Plaintiff's motion for reconsideration is largely a disagreement with the July 11, 2019

18   order dismissing claim one.  Plaintiff's disagreement with the July 11, 2019 order is not grounds

19   for reconsideration.  U.S. Westlands Water Dist., 134 F.Supp.2d at 1131 (party seeking

20   reconsideration must show more than disagreement with the court's decision.).

21   To the extent plaintiff's request for reconsideration raises new arguments and presents

22   new evidence, plaintiff fails to demonstrate that he could not have requested reconsideration of

23   the July 11, 2019 order earlier in this litigation.  Accordingly, the request for reconsideration

24   should be denied as untimely.  Kona Enters., Inc. v. Estate of Bishop, 229 F.3d 877, 890 (9th Cir.

25   2000) (a motion for reconsideration may not be used to raise arguments or present evidence for

26   the first time when they could reasonably have been raised earlier in the litigation).

27   In the motion for reconsideration, plaintiff also argues that claim one raised a claim for

28   denial of access to the courts.  Assuming the court misconstrued claim one, the undersigned

3

1   herein finds that claim one fails to state a potentially colorable claim for denial of access to the

2   courts.

3        Inmates have a fundamental constitutional right of access to the courts.  <u>Lewis v. Casey</u>,

4   518 U.S. 343, 346 (1996).  However, to state a viable claim for relief, plaintiff must show that he

5   suffered an actual injury, which requires "actual prejudice to contemplated or existing litigation."

6   <u>Nevada Dep't of Corr. v. Greene</u>, 648 F.3d 1014, 1018 (9th Cir. 2011) (citing <u>Lewis</u>, 518 U.S. at

7   348) (internal quotation marks omitted).  The failure to allege an actual injury is "fatal."  <u>Alvarez</u>

8   <u>v. Hill</u>, 518 F.3d 1152, 1155 n.1 (9th Cir. 2008) ("Failure to show that a 'non-frivolous legal

9   claim had been frustrated' is fatal.") (citing <u>Lewis</u>, 518 U.S. at 353 & n.4).  In addition, plaintiff

10  must allege the loss of a "non-frivolous" or "arguable" underlying claim.  <u>Christopher v. Harbury</u>,

11  536 U.S. 403, 413-14 (2002).  The nature and description of the underlying claim must be set

12  forth in the pleading "as if it were being independently pursued."  <u>Id.</u> at 417.

13       In the second amended complaint, plaintiff alleged that defendant Cooper stole legal

14  documents containing damaging evidence against defendants.  (ECF No. 13 at 5.)  Plaintiff

15  alleged that the loss of his legal property froze "his ability to litigate a legitimate, non-frivolous

16  suit."  (<u>Id.</u>)  However, plaintiff failed to describe the seized exhibits.  Plaintiff also failed to

17  specifically describe the non-frivolous or arguable claim he lost as a result of the alleged theft of

18  his documents.  For these reasons, plaintiff's second amended complaint fails to state a

19  potentially colorable claim for violation of the right to access the courts.  On these grounds,

20  plaintiff's motion for reconsideration should be denied.

21       The undersigned observes that in the motion for reconsideration, plaintiff includes new

22  allegations supporting his denial of access to the courts claim.  Plaintiff may not amend his

23  complaint by way of his request for reconsideration.  In addition, as discussed above, plaintiff

24  fails to demonstrate why he did not raise these allegations and arguments sooner.  The

25  undersigned does not consider these new allegations and arguments regarding claim one as they

26  are untimely.  <u>Kona Enters., Inc. v. Estate of Bishop</u>, 229 F.3d at 890.

27       Accordingly, for the reasons stated above, plaintiff's motion for reconsideration of the

28  July 11, 2019 order dismissing claim one should be denied.

4

III.     Legal Standard for Summary Judgment

Summary judgment is appropriate when it is demonstrated that the standard set forth in Federal Rule of Civil Procedure 56 is met.  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c)).  "Where the nonmoving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case."  Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory committee's notes to 2010 amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact").  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Celotex Corp., 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id. at 323.

Consequently, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a

dispute exists.  See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.  The opposing party

must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

(1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return

a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436

(9th Cir. 1987), overruled in part on other grounds, Hollinger v. Titan Capital Corp., 914 F.2d

1564, 1575 (9th Cir. 1990).

In the endeavor to establish the existence of a factual dispute, the opposing party need not

establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

trial."  T.W. Elec. Serv., 809 F.2d at 630.  Thus, the "purpose of summary judgment is to 'pierce

the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963

amendments).

In resolving a summary judgment motion, the court examines the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R.

Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at

255.  All reasonable inferences that may be drawn from the facts placed before the court must be

drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587; Walls v. Central Costa

County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011).  Nevertheless, inferences are not

drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from

which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224,

1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a

genuine issue, the opposing party "must do more than simply show that there is some

metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could

not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for

trial.'"  Matsushita, 475 U.S. at 586 (citation omitted).

By contemporaneous notice provided on June 5, 2019 (ECF No. 17), plaintiff was advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (*en banc*); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

IV.     Plaintiff's Claims

This action proceeds on plaintiff's second amended complaint (ECF No. 13) against defendants Allen, Armenta, J. Cantu, L. Cantu, Cooper, Walker, Wheeler and Winkler as to claims two, three, four and five.  All claims allege retaliation.

*Claim Two*

Claim two alleges retaliation by defendants Cooper, Armenta, Winkler, Wheeler, J. Cantu and L. Cantu.  Plaintiff alleges that on April 17, 2017, he filed a grievance against defendants Cooper, Armenta, Winkler, Wheeler, J. Cantu and L. Cantu.  Plaintiff alleges that these defendants immediately retaliated against plaintiff by conducting excessive cell searches of plaintiff's cell.  Plaintiff alleges that defendant Cooper directed his cabal to search plaintiff's cell two weeks after it had been searched "uneventfully."  Plaintiff alleges that during this search, the cabal broke cables by pulling them out of plaintiff's television and scattered his legal property.

*Claim Three*

Claim three alleges retaliation by defendants Walker and Cooper.  Plaintiff alleges that he filed a grievance against defendant Walker, i.e., grievance no. 15-1803.  Plaintiff alleges that he put this grievance in the secure grievance box.  Plaintiff alleges that defendant Allen collected the grievance but failed to respond to it.  Plaintiff alleges that his family sent a copy of the grievance to the Sacramento Office.  The Sacramento Office referred the grievance to defendant Allen, who denied receiving it.  Defendant Allen referred the grievance to defendant Cooper.

Defendant Cooper interviewed defendant Walker.  Plaintiff alleges that immediately following that interview, defendant Walker was given the "green light" to do as he pleased to plaintiff's personal property.  Plaintiff alleges that the words "green light" were defendant Walker's words, and not plaintiff's words.  Plaintiff alleges that defendant Walker stomped on plaintiff's hot pot and scattered plaintiff's legal documents everywhere throughout his cell.

1   Plaintiff alleges that defendant Walker intimidated plaintiff every day by either destroying

2   plaintiff's mail or keeping it in the guard's office drawer.

3       *Claim Four*

4       Claim four alleges retaliation by defendants Cooper, Walker and Allen.  In particular,

5   plaintiff alleges further retaliation by defendants against plaintiff for filing the grievance against

6   defendant Walker discussed in claim three.

7       Plaintiff alleges that Correctional Officer Colosimo sent an Enhanced Outpatient ("EOP")

8   inmate, not yet cleared by mental health, to plaintiff's housing unit.  Plaintiff alleges that

9   defendant Walker and Correctional Officer Liem placed this unstable inmate in plaintiff's cell.

10  Plaintiff alleges that he repeatedly informed defendant Walker and Correctional Officer Liem

11  about the inmate's unstable behaviors, which included banging his head repeatedly on the cement

12  wall, drinking his own urine, etc.  Plaintiff alleges that Correctional Officer Liem documented

13  plaintiff's concerns and notified defendant Cooper.  However, nothing was done to help the

14  mentally ill inmate or address plaintiff's safety concerns.  Plaintiff alleges that defendant Walker

15  told him, "next time be careful who you file a complaint against."

16      Plaintiff alleges that when he went back to defendant Walker's supervisors, i.e.,

17  defendants Cooper and Allen, they "shot it back" to defendant Walker, who did nothing.  Plaintiff

18  went to the mental health department and spoke with the EOP psychiatrist, who told plaintiff that

19  "they" were unaware that the mentally ill inmate had been removed.  "They" told plaintiff that the

20  mentally ill inmate had not been cleared from the EOP program.  After plaintiff spoke to the EOP

21  psychiatrist, the mentally ill inmate was removed from plaintiff's cell.  However, "the same above

22  defendants" moved another problem EOP inmate into plaintiff's cell.  This mentally ill inmate

23  had also not been removed from the EOP program.

24      *Claim Five*

25      Claim five alleges retaliation by defendants Armenta and Cooper.  Plaintiff alleges that on

26  February 8, 2018, plaintiff followed the directives of Correctional Officer Christiansen and

27  Correctional Counselor Dixon to report "right away" to the correctional counselor's office.  When

28  plaintiff arrived at the office, defendant Armenta proceeded to "castigate plaintiff with profanity

8

and unprofessionalisms."  Plaintiff attempted to address defendant Armenta's behavior with his supervisor, defendant Cooper.  However, defendant Cooper refused to address plaintiff's concerns.

Four hours later, defendants Armenta and Cooper falsely charged plaintiff with being "out of bounds."  Plaintiff alleges that defendants filed the false disciplinary charges because plaintiff submitted a Form 22 regarding defendant Armenta's "caustic behavior toward plaintiff."

V.      Discussion—Alleged Failure to Exhaust Administrative Remedies

A.   Legal Standard for Administrative Exhaustion

Because plaintiff is a prisoner suing over the conditions of his confinement, his claims are subject to the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a).  Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a); Porter v. Nussle, 534 U.S. 516, 520 (2002) ("§ 1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences").  "[T]hat language is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies."  Ross v. Blake, 136 S. Ct. 1850, 1856 (2016) (citations omitted).  However, "inmates are not required to specially plead or demonstrate exhaustion in their complaints."  Jones v. Bock, 549 U.S. 199, 216 (2007).  Instead, "the defendant in a PLRA case must plead and prove nonexhaustion as an affirmative defense," and it is the defendant's burden "to prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy."  Albino v. Baca, 747 F.3d 1162, 1171-72 (9th Cir. 2014) (en banc) (citations omitted).

B.   Discussion

Defendants argue that plaintiff failed to exhaust administrative remedies as to claims, two, three and four.[1]  Defendants contend that plaintiff filed four grievances relevant to this action but

---

[1]  Defendants initially argued that plaintiff failed to exhaust administrative remedies as to claim five.  However, in the reply to plaintiff's opposition, defendants concede that plaintiff timely

1   none of these grievances exhausted plaintiff's administrative remedies regarding claims two,

2   three and four.  Defendants identify these grievances as Appeal Log No. 1510003 (an appeal of

3   grievance log no. MCSP-15-01803); Appeal Log No. 1501491 (an appeal of grievance log no.

4   MCSP-15-01154); Appeal Log No. 1706433 (an appeal of grievance no. MCSP-17-01598); and

5   Appeal Log No. 1806900 (an appeal of grievance no. MCSP-18-00952).  (ECF No. 124-5 at 3-5.)

6          Defendants contend that plaintiff filed four other appeals during the relevant time period,

7   but they did not contain any of the allegations raised in this action:  Appeal Log. No. 1505419,

8   Appeal Log 1511916, Appeal Log No. 1706450 and Appeal Log No. 1714571.  (Id. at 5-6.)

9          In his opposition, plaintiff does not dispute that Appeal Log Nos. 1510003, 1501491,

10  1706433 and 1806900 are relevant to this action.  (ECF No. 133 at 16.)  Plaintiff argues that a

11  fifth grievance is relevant to claim one.  (Id.)  As discussed above, plaintiff's request for

12  reconsideration of the order dismissing claim one should be denied.  For this reason, the

13  undersigned will not discuss the grievance plaintiff claims is relevant to claim one.

14          *Appeal Log Nos. 1505419, 1511916, 1706450 and 1714571*

15          After reviewing Appeal Log Nos. 1505419, 1511916, 1706450 and 1714571, the

16  undersigned finds that these grievances do not raise claims related to the instant action.  Appeal

17  Log No. 1505419 claimed that Correctional Officer Richardson refused to accept a CDCR Form

18  22 when plaintiff attempted to hand it to her and acted in an unprofessional manner.  (Id. at 104-

19  117.)  Appeal Log No. 1511916 contained claims regarding Bruce, the canteen manager.  (Id. at

20  119-136.)  Appeal Log No. 1706450 concerned the size of meal portions.  (Id. at 138-154.)

21  Appeal Log No. 1714571 claimed that grievance no. MCSP-17-02744 was erroneously cancelled.

22  (Id. at 156-181.)  In MCSP-17-07244, plaintiff claimed that on May 18, 2017, Facility D

23  Correctional Officer confiscated his personal legal documents from the chapel. (Id. at 156.)

24  MCSP-17-07244 appears to concern claim one, which is dismissed.

25          *Appeal Log No. 151000, MCSP-15-01803*

26          In MCSP-15-01803, plaintiff claimed that defendant Walker wrongly confiscated

27

28  exhausted claim five. (ECF No. 136 at 10.)

10

1   plaintiff's hot pot.  As discussed above, in claim three, plaintiff alleges that defendant Walker

2   stomped on his hot pot in retaliation for filing MCSP-15-01803.  Defendants contend that MCSP-

3   15-01803 is relevant to claim three.

4          In MCSP-15-01803, signed by plaintiff on August 4, 2015, plaintiff described the subject

5   of his appeal as "refusal of officers to comply with Form 22 and 602."  (ECF No. 124-5 at 37.)

6   Plaintiff wrote that he filed a 602 grievance, i.e., MCSP-15-01803, with an attached Form 22.

7   (Id.)  Plaintiff wrote that the Correctional Officer's Superior Officer, i.e., defendant Allen,

8   returned the form and failed to "fulfill his duty" in filling it out.  (Id. at 37, 39.)  Plaintiff wrote

9   that his grievance also addressed "those same state actors" that confiscated plaintiff's personal

10  property, which defendant Walker erroneously took.  (Id. at 39.)  Plaintiff wrote that his property

11  card will confirm his ownership of the confiscated property.  (Id.)

12         In the section of the form describing "action requested," plaintiff requested no further

13  retaliation for the filing of any grievances, the return of all personal property erroneously

14  confiscated by defendant Walker and held by his superiors (defendants Cooper and Allen), an

15  explanation for what alternatives inmates have if responding staff refuse to fill out Form 22s, an

16  explanation for the refusal to turn over plaintiff's property card, a copy of plaintiff's property card

17  and an explanation addressing who an inmate goes to for assistance when the staff have created

18  "impedences" to the grievance process.  (Id. at 37, 39.)

19         On September 19, 2015, grievance MCSP-15-01803 was partially granted at the first level

20  of review.  (Id. at 41.)  The first level response described the appeal issue as follows:

21              On June 6, 2015, Building 8 Correctional Officer B. Walker,
             confiscated a hot pot from Inmate McClintock's cell.  McClintock
22           alleges the hot pot was wrongfully confiscated from his cell, as it was
             not altered.  Inmate McClintock filed a 602 inmate appeal (MCSP-
23           B-01803) on June 30, 2015, however, the appeal was initially
             rejected by the Mule Creek State Prison (MCSP) Appeal Coordinator
24           due to the fact a CDCR form 22 did not have a staff response from
             Officer Walker, or a supervisor's review from Officer Walker's
25           direct supervising Sergeant.  McClintock is alleging Officer Walker,
             Correctional Sergeant Cooper and Correctional Lieutenant Allen,
26           impeded his ability to properly submit a completed CDCR 22.  In
             addition, McClintock alleges he requested on 3 separate occasions, a
27           copy of his property card from the MCSP Receiving and Release (R
             & R) Sergeant.
28

1    (Id. at 41.)

2        The first level response described the action requested:  1) no further retaliation or

3    impedences for the filing of any grievance; 2) return of all property erroneously confiscated by

4    Officer Walker and held by his superiors (Sgt. T. Cooper, Lt. M. Allen); 3) explanation of the

5    alternatives an inmate has if a CDCR 22 is refused to be filled out by responsible staff and their

6    superiors; 4) explanation for refusing to provide a copy of the property card from R & R; 5) a

7    copy of the property card; and 6) a resolution conference with a MCSP administrator.  (Id.)

8        The first level response states that plaintiff was interviewed regarding the grievance.  (Id.

9    at 41.)  The first level response states that plaintiff incorrectly filled out the CDCR 22 form, as it

10   was addressed to the Appeal Coordinator instead of defendant Walker.  (Id.)  The first level

11   response states that the appeals office returned the form back to plaintiff without a response,

12   attaching detailed instructions on how to properly address and fill out a CDCR 22 form.  (Id. at

13   41-42.)  The first level response states that plaintiff's hot pot was properly confiscated and

14   deemed contraband because plaintiff scribed the hot pot himself rather than MCSP staff.  (Id. at

15   42.)

16       In his appeal of the first level response, plaintiff claimed that he correctly filled out the

17   CDCR 22 form.  (Id. at 38.)  Plaintiff claimed that defendant Walker erroneously took his hot pot.

18   (Id. at 39.)  Plaintiff also wrote that defendant Allen "personalized his influence the moment the

19   staff complaint (B-01154)… came across his desk and he chose not to resolve Walker's

20   retaliatory behavior toward appellant but to destroy it and impede the grievance procedure

21   delineated per Title 15…Walker immediately destroyed appellant's cell after his query of the staff

22   complaint by Sgt. Cooper who like Lt. Allen had given a green light to Walker's behavior."  (Id.

23   at 40.)

24       On January 4, 2015, MCSP-15-01803 was granted in part at the second level of review.

25   (Id. at 43-46.)  The second level response stated, "The appellant is submitting this appeal relative

26   to the confiscation of personal property and the alleged refusal of Correctional Officers (C/O's) to

27   comply with regulations applicable to CDCR Form 22 and 602."  (Id. at 43.)

28   ////

The second level response addressed plaintiff's new claim raised in his appeal of the first level response that defendant Allen destroyed a staff complaint, i.e., MCSP-15-01154:

> In Section D, the appellant indicated he was dissatisfied with the FLR again stating the hot pot in question was functional, unaltered and in his possession for years. Inmate McClintock states in part, "The 22 was handed directly to Walker who signed it and returned it to me because the unaltered property was in the hands of LT Allen and [since] Lieutenant Allen had initially destroyed the "Walker Staff Complaint" appellant had no other alternative but to put "Appeals Coordinator" [on the form 22]…" The appellant also contends a copy of his property card was requested three times (3) via with a signed trust withdrawal slip. Inmate McClintock states in part, "the property card will prove it is my property…Lt. Allen personalized his influence the moment the staff complaint (MCSP-B-15-01154) came across his desk and he chose not to resolve Walker's retaliatory behavior towards appellant…"

> Review at the Second Level (SLR) of this appeal, supporting documentation, and the FLR response finds no reference to the alleged destruction of a "Walker Staff Complaint" in the original appeal submission. Based on this fact, this issue will not be addressed in this appeal response. However, it should be noted that appeal log number MCSP-B-15-01154 mentioned by the appellant in Section D as an allegedly destroyed staff complaint was received in the Inmate Appeals Office and forwarded to the hiring authority who determined it did not meet the criteria for staff complaint processing. It was then processed through the Third Level of Review as a routine appeal in accordance with CCR 3084.9(i).

(Id. at 44-45.)

In his appeal of the second level response, plaintiff wrote, in relevant part, "There's no explanation on Lt. Allen's/Sgt. Cooper's conduct at their administrative level of responsibilities during and after informing Walker at the prgm office and giving Walker a 'green light' and being held accountable for immediately returning to Bldg. 8 with the sole intention to retaliate and act accordingly, destroying the cell, personal property, legal materials and wrongfully confiscating personal property." (Id. at 38, 40.) Plaintiff wrote that there was still no explanation why a serious staff complaint was destroyed by the third watch lieutenant at the time of defendant Walker's initial infraction. (Id. at 40.) Plaintiff wrote that he requested in his staff complaint that he not be retaliated against for filing it. (Id.)

On May 6, 2016, the third level response to MCSP-15-01803 was issued. (Id. at 34-36.) The third level response found that plaintiff's hot pot was properly confiscated as contraband.

13

1   (Id. at 35.)  The third level response found no evidence to support plaintiff's claim that staff were

2   non-responsive to property submitted CDCR Form 22s and/or that plaintiff's access to the appeals

3   process was impeded due to alleged violations in the written response process.  (Id.)  The third

4   level response did not address the retaliation claims raised in the third level appeal.

5            In undisputed fact no. 28, defendants state that grievance MCSP-15-01803 did not accuse

6   defendants Walker or Cooper of the factual allegations that form the basis of claim three.  (ECF

7   No. 124-2 at 4.)  In undisputed fact no. 29, defendants state that MCSP-15-01803 did not accuse

8   defendant Walker of retaliating against plaintiff by destroying his hot pot, scattering his legal

9   documents or confiscating or destroying his mail.  (Id.)  In undisputed fact no. 30, defendants

10  state that MCSP-15-01803 did not accuse defendant Cooper of giving defendant Walker the

11  "green light" to retaliate against plaintiff by destroying his hot pot, scattering his legal document,

12  or confiscating his mail.  (Id.)

13           In his response to undisputed facts nos. 28-30, plaintiff does not dispute that MCSP-15-

14  01803 did not raise the claims raised in claim three:

15               Items 28-32:  The defendant's boot print on the hot pot was not
                mentioned.  The (once) working hot pot was on plaintiff's property
16              engraved by PVSP R & R Officer—not MCSP R & R guard.  It
                passed 2 fire marshal inspections (not modified) and multiple (50 +)
17              cell searches.  The defendant felt the need to return from his
                administration meeting to "modify" plaintiff's property by putting
18              his foot to it.  The defendant's own admission to the plaintiff was that
                he was given the "green light."  The admin … had a duty to plaintiff's
19              safety and security—They were given over a year's of notices by the
                plaintiff and plaintiff's family.  At a minimum, to preserve plaintiff's
20              concerns and retribution by B. Walker—the administrators could
                have separated the plaintiff from Walker—moving either to another
21              building.  See Exhibits.  These items are in dispute.

22  (ECF No. 133 at 19-20.)

23           The undersigned finds that MCSP-15-01803 did not raise a retaliation claim in the

24  originally submitted grievance, i.e., 602.  While plaintiff may have attempted to raise retaliation

25  claims in his appeals of the first and second level responses, the regulations required plaintiff to

26  raise his retaliation claims in his originally submitted grievance.  See former Cal. Code Regs. tit.

27  15, § 3084.1(b) (administrative remedies shall not be considered exhausted relative to any new

28  issue, information, or person later named by the appellant that was not included in the originally

14

submitted CDCR Form 602 … and addressed through all required levels of administrative review).

By failing to raise a retaliation claim in the grievance originally submitted in MCSP-15-01803, plaintiff failed to comply with the applicable procedural rules.  Therefore, MCSP-15-01803 could not have exhausted any retaliation claims raised in plaintiff's appeals from the first and second level decisions.  <u>Jones</u>, 549 U.S. at 218 (to properly exhaust administrative remedies, prisoner must complete the administrative review process in accordance with the applicable procedural rules; these rules are not defined by the PLRA, but by the prison grievance process itself).

The undersigned further finds that plaintiff's request that he be subject to no further retaliation, stated in the section of the first level grievance describing the requested relief, did not put prison officials on notice that he was claiming that the alleged confiscation of his hot pot, raised in MCSP-15-01803, was motivated by retaliation.  The section of the first level grievance describing the subject of  plaintiff's grievance did not include retaliation and nor did the section explaining plaintiff's issue.  <u>Sapp v. Kimbrell</u>, 623 F.3d 813, 824 (9th Cir. 2010) ("A grievance suffices to exhaust a claim if it puts the prison on adequate notice of the problem for which the prisoner seeks redress.")

For the reasons discussed above, the undersigned finds that MCSP-15-01803 did not exhaust claims two, three or four, to the extent MCSP-15-01803 raised these retaliation claims, because these claims were not properly raised in the original grievance.

*Appeal Log No. 1501491, MCSP-15-01154*

As discussed above, in claim four, plaintiff alleges that defendants Cooper, Walker and Allen retaliated against plaintiff for filing the grievance against defendant Walker discussed in claim three by placing mentally unstable inmates in his cell on two occasions.  Defendants contend that MCSP-15-01154 is relevant to this claim.

In MCSP-15-01154, signed by plaintiff on March 5, 2015, plaintiff complained of "Guard: Walker… unprofessional behavior by staff in a potentially dangerous situation."  (ECF No. 124-5 at 19.)  Plaintiff wrote that after he informed the guard of his cellmate's "erratic, irrational

15

1   behavior (psychosis)," the guard cracked jokes and minimized the situation.  (Id. at 19.)  Plaintiff

2   requested that his cellmate be moved and for Walker to "cease and desist his unprofessional

3   behavior, provocations toward the plaintiff," and "that no further retaliation by Walker &/or his

4   co-workers for the filing of this staff complaint."  (Id. at 19-20.)

5        On June 9, 2015, grievance MCSP-15-01154 was partially granted at the first level of

6   review.  (Id. at 21.)  The first level response described the appeal issue as plaintiff's allegation

7   that defendant Walker "behaved unprofessional by instigating and provoking him (McClintock)

8   after informing defendant Walker of his cellmate's erratic behavior that endangered him and his

9   cellmate."  (Id.)  The first level response stated that defendant Cooper interviewed plaintiff

10  regarding the grievance.  (Id.)  During the interview, plaintiff reiterated what was said in the

11  appeal.  (Id.)  Defendant Cooper interviewed defendant Walker.  (Id.)  Defendant Walker stated

12  that he could not recall an encounter with plaintiff regarding a bed move due to plaintiff's

13  cellmate's erratic behavior on March 5, 2015.  (Id.)

14       In his appeal of the first level response, plaintiff wrote that defendant Walker perjured

15  himself when he said he did not recall the encounter with plaintiff regarding his cellmate.  (Id. at

16  18.)  Plaintiff also wrote that defendant Walker had retaliated against him *for filing* grievance

17  MCSP-15-01154:  "His escalation of non-professional behavior since the filing of this complaint

18  and during the queries of his superiors to him regarding this complaint which clearly states in this

19  complaint 'no further retaliation towards the plaintiff for the filing of this 'serious staff

20  complaint'…"  (Id.)

21       On July 10, 2015, grievance MCSP-15-01154 was partially granted at the second level of

22  review by Warden Lizarraga.  (Id. at 23-25.)  The second level response described the issue as

23  follows:

24               The appellant submitted a CDCR 602 HC that included allegations
                 against custody staff.  A copy of the CDCR 602 HC was forwarded
25               to the Inmate Appeals Office to address these allegations.  It is
                 appellant's position that he informed Officer Walker that his cellmate
26               was acting erratic and irrational and that these actions endangered the
                 cellmate and the appellant.  He claimed that Officer Walker cracked
27               jokes, belittled him, minimized the seriousness of the situation and
                 refused to call a supervisor.
28

                                                    16

> The appellant requested that his cellmate be placed where he can receive medical and mental health care, that Officer Walker cease and desist his unprofessional behavior and provocations, that Officer Walker be retrained regarding dangerous situations, and that he not be subjected to further retaliation for filing this appeal and declaration be protected from spoilage per Evidence Code Section 1553.

(Id. at 23.)

In his appeal of the second level response, plaintiff wrote that defendant Walker retaliated against plaintiff for filing grievance MCSP-15-01154. (Id. at 16, 18.) Plaintiff wrote that defendant Walker destroyed plaintiff's legal property, apparently in retaliation for the filing of MCSP-15-01154. (Id. at 18.)

On September 28, 2015, grievance MCSP-15-01154 was denied at the third level of review. (Id. at 13-14.) The third level response stated that plaintiff claimed that defendant Walker acted unprofessionally after plaintiff informed him of his cellmate's erratic/irrational behavior. (Id. at 13.) The third level response did not address plaintiff's claim that defendant Walker destroyed plaintiff's legal property in retaliation for filing the grievance. (Id. at 13-14.)

In undisputed fact no. 22, defendants contend that MCSP-15-01154 did not accuse defendants Cooper, Walker or Allen of the factual allegations that form the basis of claim four. (ECF No. 124 at 2.) In undisputed fact no. 23, defendants contend that MCSP-15-01154 did not accuse defendants Cooper, Walker or Allen of retaliating against plaintiff by forcing plaintiff to share cells with mentally unstable inmates. (Id. at 3.)

In his response to defendants' undisputed facts nos. 22 and 23, plaintiff does not dispute that MCSP-15-01154 did not accuse defendants Cooper, Walker or Allen of retaliating against plaintiff by forcing plaintiff to share cells with mentally unstable inmates. (ECF No. 133 at 18-19.) In response to defendants' undisputed fact no. 22, plaintiff alleged:

> Items 22 and 24: The complaint was timely filed and "dead ended" by Lt. Allen. Lt. Allen was called to answer for the complaint that safely arrived at CDCR HQ's in Sacramento—but failed to make it from Bldg. 8 to the Program Office on B-Yard. B. Walker was given the "green light" by Sgt. Cooper (B. Walker's own word choice and admission) directed at the plaintiff. So the defendants' handling of plaintiff's operative complaint is paramount and in dispute to 1st amendment violations. See exhibit.

17

1    (Id. at 18.)

2        In response to defendants' undisputed fact no. 23, plaintiff alleged,

3            Item 23:  Plaintiff repeatedly brought his safety and security concerns
            to B. Walker, C/O Liem, Lt. Allen and Sgt. Cooper (plaintiff's family
4            also made efforts calling Warden Lizarraga to inform him to take
            action)—yet only after C/O Liem made the minimal effort logging
5            the escalating concerns and making phone calls (re: the "misplaced"
            EOP inmate).  The EOP inmate had never been cleared from the EOP
6            program (his clinicians never knew and only they had the power to
            graduate an EOP inmate and place him with general population) and
7            was deliberately placed in plaintiff's cell by the Bldg 7 C/O
            Colosimo (lead defendant to plaintiff's ongoing § 1983 2: 13-cv-
8            0264) coordinating  with  B. Walker.   B. Walker, Lt. Allen, Sgt.
            Cooper did zero action (nor did Warden Lizarraga) to alleviate
9            plaintiff's safety concerns.  This item is in dispute.

10   (Id. at 18-19.)

11       The undersigned finds that MCSP-15-01154 did not allege that defendants Cooper,

12   Walker or Allen placed mentally unstable inmates in plaintiff's cell in retaliation for plaintiff

13   filing grievances.  Instead, plaintiff claimed that defendant Walker made jokes and responded

14   inappropriately to plaintiff's complaint regarding his mentally unstable cellmate.  For these

15   reasons, MCSP-15-01154 did not exhaust plaintiff's retaliation claim raised in claim four.

16       In his response to undisputed fact no. 22, plaintiff appears to claim that he attempted to

17   submit a grievance raising the retaliation claim alleged in claim 4, but it was confiscated by

18   defendant Allen.  Later in his opposition, plaintiff alleges that defendant Allen destroyed a staff

19   complaint regarding defendant Walker, which "dead ended" plaintiff's administrative appeals.

20   (Id. at 10.)  Plaintiff goes on to allege that defendant Allen appointed defendant Cooper to "deal

21   with" the staff complaint against defendant Walker only after CDCR Headquarters asked

22   defendant Allen about the whereabouts of the grievance.  (Id.)

23       The undersigned observes that plaintiff originally filed MCSP-15-01154 as a staff

24   complaint.  (ECF No. 124-2 at 22.)  However, the MCSP Appeals Coordinator determined that

25   the appeal did not meet the criteria for assignment as a staff complaint so it was processed as a

26   regular routine appeal.  (Id.)  As discussed above, the second level response to MCSP-15-01803

27   also addressed plaintiff's claim that defendant Allen destroyed plaintiff's staff complaint filed

28   against defendant Walker in MCSP-15-01154.  The second level response noted that MCSP-15-

01154, described by plaintiff as an allegedly destroyed staff complaint, was determined not to meet the criteria for a staff complaint and was processed as a routine appeal.  (Id. at 45.)

Plaintiff's claim in the opposition that defendant Allen thwarted plaintiff's attempt to file a staff complaint alleging that defendant Walker retaliated against plaintiff by placing mentally unstable inmates in his cell is apparently based on the decision not to process MCSP-15-01154 as a staff complaint.  The decision not to process MCSP-15-01154 as a staff complaint did not prevent plaintiff from exhausting the claims raised in claim four because this grievance did not raise the retaliation claim raised in claim four.  Moreover, this grievance was processed to the final level of review.

The undersigned further finds that plaintiff's request that he be subject to no further retaliation written in the section of the grievance describing the requested relief did not put prison officials on notice that he was claiming that defendants were motivated by retaliation when they allegedly placed the mentally unstable inmate in his cell.  The section of the grievance describing the subject of plaintiff's grievance did not include retaliation and nor did the section explaining plaintiff's issue.  Sapp v. Kimbrell, 623 F.3d at 824 ("A grievance suffices to exhaust a claim if it puts the prison on adequate notice of the problem for which the prisoner seeks redress.")

For the reasons discussed above, the undersigned finds that MCSP-15-01154 did not exhaust claim four.  The undersigned also finds that MCSP-15-01154 did not exhaust claims two or three as this grievance did not include the allegations raised in these claims.

*MCSP-17-01598*

In claim two, plaintiff alleges that on April 17, 2017, he filed a grievance against defendants Cooper, Armenta, Winkler, Wheeler, J. Cantu and L. Cantu.  Plaintiff alleges that these defendants immediately retaliated against plaintiff by conducting excessive cell searches of plaintiff's cell.  Plaintiff alleges that defendant Cooper directed his "cabal" to search plaintiff's cell two weeks after it had been searched "uneventfully."  Plaintiff alleges that during this search, the "cabal" broke cables by pulling them out of plaintiff's television and scattered his legal property.

////

As discussed herein, MCSP-17-01598 is relevant to claim two.

In MCSP-17-01598, signed by plaintiff on April 30, 2017, plaintiff claimed "retaliation/intimidation by staff during attempts at exhaustion." (ECF No. 124-5 at 71.)  Plaintiff alleged, "On 4/17/17 plaintiff proceeded with an informal Form-22 to address staff behavior-unmerited/unwarranted intimidation/retaliation by Sgt. Cooper; and his 2nd Watch:  Wheeler, Armenta, Winkler, Cantu don't like plaintiff filing grievances." (Id.)  Plaintiff alleged that he hand-delivered the Form 22 to defendants Wheeler and Cooper but they refused to take it.  (Id. at 73.)  Plaintiff mailed the Form 22 in the Building 16 mail slot.  (Id.)  Plaintiff claimed that over the next two weeks, plaintiff was the recipient of "same staff defendants behavior," described as rushing plaintiff to eat his breakfast and blocking plaintiff's exit from the mess hall.  (Id.)  Plaintiff claimed that the intimidation tactics were limited to the second watch under defendant Cooper's supervision.  (Id.)  Plaintiff claimed that while he was at mass on April 30, 2017, defendant Cooper ordered a "green light hit" on plaintiff's personal and legal property.  (Id.)  Plaintiff claimed that he had just had his room searched uneventfully at 3rd watch.  (Id.)

In the section of the grievance describing the action requested, plaintiff requested that all intimidation and harassment, particularly by the second watch under the "tutelage" of defendant Cooper, be stopped.  (Id. at 71.)  Plaintiff also requested "resolution to cease retaliatory behavior by staff…" (Id. at 73.)

Grievance MCSP-17-01598 was bypassed at the first level of review.  (Id. at 74.)  On May 29, 2017, a second level response was issued.  (Id.  75-76.)  The second level response treated plaintiff's grievance as a staff complaint and found that staff did not violate CDCR policy.  (Id. at 76.)  The response described the appeal issue as plaintiff's claim that defendants Cooper, Wheeler, Armenta, Winkler and J. Cantu intimidated and retaliated against plaintiff.  (Id. at 75.)

> Inmate McClintock alleges he first tried to remedy the harassment by producing a CDCR Form 22 to Officer Wheeler who in turn refused to accept it by stating, "Mail it in."  McClintock also states while attempting to eat his morning meal, he has been rushed from the dining hall on several occasions, and while attempting to exist the dining hall has had his path of travel blocked by various officers. And finally McClintock alleges on April 30, 2017 Sergeant Cooper ordered a "Green Light Hit" on his personal, confidential and legal property.

1   (Id. at 75.)

2         On August 21, 2017, the third level decision addressing MCSP-17-01598 was issued.  (Id.

3   69-70.)  The third level decision found no relief warranted.  (Id.)

4         The second amended complaint does not identify the date of the alleged retaliatory cell

5   search.  However, defendants' contend that the retaliatory cell search occurred on April 17, 2017

6   because plaintiff alleges that defendants *immediately* retaliated against him for filing the

7   grievance on April 17, 2017.  Defendants contend that MCSP-15-01598 did not exhaust

8   plaintiff's claim challenging the April 17, 2017 retaliatory cell search because this grievance

9   challenged a retaliatory cell search allegedly occurring on April 30, 2017.

10         The undersigned agrees with defendants that MCSP-17-01598 did not exhaust a claim by

11   plaintiff challenging a retaliatory cell search allegedly occurring on April 17, 2017.  However, the

12   undersigned disagrees with defendants' interpretation of the second amended complaint regarding

13   the timing of the at-issue cell search.  The undersigned finds that plaintiff's allegation that

14   defendants' retaliation began immediately after the filing of his grievance on April 17, 2017 does

15   not necessarily mean that the at-issue cell search occurred on April 17, 2017.

16         At his deposition, plaintiff testified that the exact date of the alleged retaliatory cell search

17   was in his grievance:

18
19           Q:  Let's get into the exact actions you're alleging Officer Winkler did.  When did these excessive cell searches that you say happened occur, what dates?

20
21
22           A:  The exact dates, I don't have in front of me, but they are very clearly delineated in the levels during my 602 exhaustion grievance process.  So you have all of the details of the dates, the events and the ones that were involved.  Everything there has been aboveboard.

23           ****

24
25           Q:  So are you saying that all of the grievances that you filed with the prison with the Office of Appeals, those all contain the exact dates your cell was searched?

26           A:  Yes.

27   (Plaintiff's Deposition at 45-46).

28   ////

At his deposition, plaintiff clarified that he identified the date of the at-issue cell search in the grievance he filed regarding this matter.  MCSP-17-01598 appears to be the relevant grievance as the factual allegations in this grievance are similar to the factual allegations raised in claim two.  Accordingly, the undersigned finds that claim two challenges the April 30, 2017 cell search raised in MCSP-17-01598.  For the reasons stated herein, the undersigned finds that MCSP-17-01598 exhausted claim two.

The level of detail in an administrative grievance necessary to properly exhaust a claim is determined by the prison's applicable grievance procedures.  Jones, 549 U.S. at 218.  At the time plaintiff filed MCSP-17-01598, the level of specificity required in grievances was described in a regulation:

> The inmate or parolee shall list all staff member(s) involved and shall describe their involvement in the issue. To assist in the identification of staff members, the inmate or parolee shall include the staff member's last name, first initial, title or position, if known, and the dates of the staff member's involvement in the issue under appeal. If the inmate or parolee does not have the requested identifying information about the staff member(s), he or she shall provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question. [¶] The inmate or parolee shall state all facts known and available to him/her regarding the issue being appealed at the time of submitting the Inmate/Parolee Appeal form, and if needed, the Inmate/Parolee Appeal Form Attachment

Cal. Code Regs. Tit. 15, § 3084.2(a) (3-4) (repealed eff. June 1, 2020).

At the outset, the undersigned observes that plaintiff appears to claim that both defendants L. Cantu and J. Cantu performed the April 30, 2017 cell search.  However, in MCSP-17-01598 plaintiff mentions only "Cantu."  The responses to MCSP-17-01598 identify the "Cantu" named in the grievance as J. Cantu, rather than L. Cantu.  For these reasons the undersigned finds that MCSP-17-01598 exhausted plaintiff's claim against defendant J. Cantu.  To the extent plaintiff claims that defendant L. Cantu participated in the retaliatory search, this claim is not exhausted because plaintiff did not clearly identify L. Cantu in his grievance.

////

////

////

1    Grievance MCSP-17-01598 claimed that on April 30, 2017, defendant Cooper ordered a

2  "green light hit" on plaintiff's cell by the second watch.[2]  While plaintiff did not specifically

3  identify the second watch officers who performed the search, the grievance named defendants

4  Armenta, Wheeler, Winkler and J. Cantu as second watch officers.  Although inartfully pled, the

5  undersigned finds that MCSP-17-01598 identified defendants Armenta, Wheeler, Winkler and J.

6  Cantu as the prison officials who performed the search.  The grievance indicates that this "green

7  light hit," i.e. cell search, was in retaliation for plaintiff submitting the CDCR Form 22 because

8  plaintiff's cell had recently been searched "uneventfully" by the third watch.  Plaintiff also

9  claimed that the "green light hit" was on his personal and legal property.  Based on the claims

10  raised in MCSP-17-01598, the undersigned finds that this grievance exhausted claim two.  See

11  Cal. Code Regs. tit. 15, § 3084.2 (a)(3-4) (repealed eff. June 1, 2020); Sapp v. Kimbrell, 623 F.3d

12  813, 824 (9th Cir. 2010) (holding that a grievance provides sufficient notice so long as "it alerts

13  the prison to the nature of the wrong for which redress is sought.").

14    While MCSP-17-01598 did not include plaintiff's claim that defendants broke cables on

15  his television and scattered his legal property during the search, as alleged in the second amended

16  complaint, the grievance stated that it was a "hit" on plaintiff's personal and legal property.

17  Plaintiff's failure to specifically describe the alleged damage done during the search does not

18  render claim two unexhausted.  Id.

19    Accordingly, the undersigned recommends that defendants' motion for summary

20  judgment on the grounds that plaintiff failed to administratively exhaust claim two be denied.

21  The undersigned also finds that MCSP-17-01598 did not exhaust claims three or four raised in the

22  second amended complaint as this grievance did not address the claims raised in claims three or

23  four.

24  ////

---

25  [2]  In the reply, defendants contend that in MCSP-17-01598 plaintiff claimed that the third watch
26  performed the search.  (ECF No. 136 at 10.)  However, a careful reading of MCSP-17-01598
   indicates that plaintiff claimed that the second watch conducted the search even though the third
27  watch had previously conducted an uneventful search of his cell.  (ECF No. 124-5 at 73.)  MCSP-
   17-01598 claimed that the third watch had not behaved like the second watch, i.e., defendants
28  Wheeler, Armenta, Winkler and Cantu.  (ECF No. 124-5 at 71, 73.)

1    VI.    Discussion—Merits of Plaintiff's Claims

2          Defendants move for summary judgment as to the merits of claims two, four and five.

3          A.  Legal Standard for Retaliation

4          "Prisoners have a First Amendment right to file grievances against prison officials and to

5    be free from retaliation for doing so."  Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012)

6    (citing Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009)).

7          A viable retaliation claim in the prison context has five elements: "(1) An assertion that a

8    state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected

9    conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and

10   (5) the action did not reasonably advance a legitimate correctional goal."  Rhodes v. Robinson,

11   408 F.3d 559, 567-68 (9th Cir. 2005).

12         B. Claim Two

13         As discussed above, in claim two, plaintiff proceeds on plaintiff's allegations that on April

14   17, 2017, he filed a grievance against defendants Cooper, Armenta, Winkler, Wheeler, J. Cantu

15   and L. Cantu.  Plaintiff alleges that in retaliation for filing this grievance, on April 30, 2017,

16   defendant Cooper ordered defendants Armenta, Winkler, Wheeler and J. Cantu to search

17   plaintiff's cell.  Plaintiff alleges that during the search, these defendants broke cables in plaintiff's

18   television and scattered his legal property.

19         As to the merits of claim two, defendants move for summary judgment as to two

20   defendants, L. Cantu and Cooper.  Defendants argue that L. Cantu was not working on April 17,

21   2017.  Defendants argue that there is no evidence that defendant Cooper ordered the at-issue

22   search.

23         *Defendant L. Cantu*

24         Defendants argue that there is no evidence that defendant L. Cantu was not working on

25   April 17, 2017.  The undersigned need not consider this argument because claim two is based on

26   a search allegedly occurring on April 30, 2017, and plaintiff failed to exhaust administrative

27   remedies as to defendant L. Cantu's participation in the April 30, 2017 search.

28   ////

24

1     *Defendant Cooper*

2         Defendants argue that defendant Cooper took no adverse action against plaintiff on April

3 17, 2017.  (ECF No. 124-3 at 25-26.)  In particular, defendants argue that there is no evidence that

4 defendant Cooper ordered the search.  The undersigned observes that defendants do not dispute

5 that defendants Armenta, Winkler, Wheeler, and J. Cantu searched plaintiff's cell, as alleged in

6 the verified second amended complaint.  Defendants also do not argue that the search advanced a

7 legitimate penological goal.

8         In support of their argument that there is no evidence that defendant Cooper ordered the

9 April 17, 2017 search, defendants cite undisputed fact nos. 40 and 41.  (Id.)  In undisputed fact

10 no. 40, defendants contend that defendant Cooper did not personally participate in any search of

11 plaintiff's cell on April 17, 2017.  (ECF No. 124-2 at 5.)  In support of this claim, defendants cite

12 plaintiff's deposition testimony at pp. 116:15-117:6.  (Id.)  At this section of his deposition,

13 plaintiff testified that defendant Cooper was not personally one of the officers who searched his

14 cell.

15         In undisputed fact no. 41, defendants contend that plaintiff never personally observed

16 defendant Cooper give the order for plaintiff's cell to be searched, and plaintiff does not have any

17 direct evidence that defendant Cooper gave an order for plaintiff's cell to be searched.  (ECF No.

18 124-2 at 5.)  In support of undisputed fact no. 41, defendants cite plaintiff's deposition transcript

19 at pp. 61:1-63:6 and 116:15-117:6.  (Id.)

20         The undersigned reviewed the pages of plaintiff's deposition cited by defendants and finds

21 that plaintiff testified that he had no direct evidence that defendant Cooper ordered the retaliatory

22 search.  For example, when asked if plaintiff personally observed defendant Cooper give the

23 order, plaintiff responded, "No…"  (Plaintiff's deposition at 61: 6-11.)  When later asked what

24 direct evidence plaintiff had that defendant Cooper gave the order to search his cell, plaintiff

25 responded,

26             Knowing his behavior from the time I did an informal level
            complaint at him, on him, knowing his behavior, his track record of
27             retaliation on inmates.  The time sequence from the time that I
            informally notified him of my complaint.

28

1    Plaintiff's deposition at 116:25-117:1-6.

2         As discussed above, at his deposition plaintiff could not recall the date of the cell search

3    and testified that his grievance identified the date of the at-issue cell search.  Accordingly, the

4    undersigned finds that plaintiff's deposition testimony regarding defendant Cooper's participation

5    in the cell search is related to the April 30, 2017 search, identified in MCSP-17-01598.

6         The undersigned finds that plaintiff's deposition testimony cited by defendants

7    demonstrates that plaintiff has no direct evidence that defendant Cooper ordered the April 30,

8    2017 search, as alleged in the second amended complaint.  Therefore, defendants met their initial

9    summary judgment burden of demonstrating the absence of evidence regarding a material fact

10   regarding claim two, i.e., that defendant Cooper ordered the search.  Devereaux v. Abbey, 263

11   F.3d 1070, 1076 (9th Cir. 2001) (when the nonmoving party has the burden of proof at trial, the

12   moving party need only point out "that there is an absence of evidence to support the nonmoving

13   party's case."); Fairbank v. Wunderman Cato Johnson, 212 F.3d 528, 532 (9th Cir. 2000) (in

14   summary judgment motion, defendant may shift burden to nonmoving party by "showing" the

15   absence of evidence to support plaintiff's claim).

16        Turning to plaintiff's opposition, in his unverified response to defendants' undisputed

17   facts nos. 40 and 41, plaintiff states,

18        Plaintiff personally heard this fact of "green lighting" the plaintiff.
          (see exhibits.)  Staff was present when it was said to him.  For fear
19        of further retaliation at that staff member, their name will be revealed
          prior to trial where protective orders can be requested.  "Green light"
20        (ing) was a term never used except by Sgt. Cooper and B. Walker.
          Plaintiff's cell was searched and destroyed after the cell-pod had
21        been thoroughly searched 2 weeks prior (uneventfully).  Sgt. Cooper
          need not have been present to enact the order.  The "green light"
22        expressed" by the defendants exposed Cooper as the origin of that
          order.  Cooper was the D-yard sgt.  See Supra, items 17-24 and
23        exhibits…

24   (ECF No. 133 at 20.)

25        In his unverified response to undisputed fact nos. 40 and 41, plaintiff appears to claim that

26   a staff member told plaintiff that defendant Cooper ordered the search, and that plaintiff cannot

27   identify this staff member at this time out of fear for the staff member's safety.

28   ////

                                    26

In the reply, defendants contend that plaintiff's new factual allegations that an unidentified staff member disclosed to him that defendant Cooper ordered the search contradicts plaintiff's deposition testimony that he had no direct evidence that defendant Cooper ordered the search. (ECF No. 136 at 9.)  "The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony."  Van Asdale v. Int'l Game Tech., 577 F.3d 989, 998 (9th Cir. 2009).

The undersigned does not consider plaintiff's claim that an unidentified staff member told him that defendant Cooper ordered the search because this statement is not verified.  However, had this statement been verified, the undersigned would disregard this statement as a sham affidavit because it contradicts plaintiff's deposition testimony that he has no direct evidence that defendant Cooper ordered the search.  Id. at 998-99 (the sham affidavit rule can only be applied when the inconsistency between the prior testimony and subsequent affidavit is clear and unambiguous).

In a verified declaration attached to the opposition, plaintiff claims that on April 17, 2017, defendant Armenta came to plaintiff's cell and said, "Green light time!"  (ECF No. 133 at 41.) Plaintiff states that no one but defendants Cooper and Walker had previously used the term "green light."  (Id.)  Plaintiff infers that defendant Cooper ordered the search based on defendant Armenta's use of the term "green light."

While plaintiff claims that defendant Armenta used the term "green light" on April 17, 2017, for the reasons stated herein, the undersigned finds that defendant Armenta's alleged use of this term during the April 30, 2017 search would not show that defendant Cooper ordered the search.

The undersigned finds that plaintiff does not have personal knowledge that defendants Cooper and Walker are the only prison officials to use the term "green lighting," as this term is not unusual or uncommon in the prison context.  Fed. R. Civ. P. 56(c)(4) (affidavits or declarations used to oppose a summary judgment motion must be made on personal knowledge, set out fact that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated); Barthelemy v. Air Lines Pilots Ass'n., 897 F.2d 999,

1    1018 (9th Cir. 1990) (Rule 56's requirement of personal knowledge and competence to testify

2    may be inferred from the declaration itself); see Williams v. Allison, 2021 WL 3502359, at *3

3    (E.D. Cal. July 21, 2021) (defendant placed a "green light" on plaintiff); Richey v. Sinclair, 2021

4    WL 1840755, at *1 (W.D. Wash. May 7, 2021) (claim that information gave general population a

5    "green light" to take plaintiff out); Hammler v. Franklin, 2018 WL 6219896, at *1 (C.D. Cal.

6    Sept. 12, 2018 (inmates issued a green light on plaintiff) .  For these reasons, defendant

7    Armenta's alleged use of the term "green light" during the April 30, 2017 search does not

8    demonstrate that defendant Cooper ordered the search.

9         Even if plaintiff heard defendant Cooper use the term "green light" in the past, the

10   undersigned finds that it is not reasonable to infer from defendant Armenta's use of this term

11   during the search that defendant Cooper ordered this search.  Anderson, 477 U.S. at 249-50, 255

12   (when circumstantial evidence is presented by the non-moving party, the court may consider the

13   plausibility and reasonableness of the inferences arising therefrom).  As stated above, the term

14   "green lighting" is not unusual in the prison context.  For this reason, it is not reasonable to infer

15   that defendant Cooper ordered the April 30, 2017 search from defendant Cooper's alleged past

16   use of this term and defendant Armenta's alleged use of the term during the search .

17        The undersigned also considers whether the allegations in the verified second amended

18   complaint demonstrate that defendant Cooper ordered the search.  Schroeder v. McDonald, 55

19   F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating verified complaint as affidavit opposing

20   summary judgment where allegations based on plaintiff's personal knowledge).

21        As discussed above, in the verified second amended complaint plaintiff alleges he filed a

22   grievance against defendants Cooper, Armenta, Winkler, Wheeler and J. Cantu on April 17, 2017

23   and on April 30, 2017, defendant Cooper ordered defendants Armenta, Winkler, Wheeler and J.

24   Cantu to search his cell in retaliation for filing the grievance.  Plaintiff alleges that the third watch

25   "uneventfully" searched his cell two weeks prior to April 30, 2017.

26        In MCSP-17-01598, plaintiff claimed that the cell search was in retaliation for his

27   submission of a CDCR Form 22, rather than a grievance.  Attached to MCSP-17-01598 is the

28   CDCR Form 22 plaintiff submitted April 17, 2017 that allegedly led to the April 30, 2017 search.

(ECF No. 124-5 at 78.)  In this form, plaintiff wrote that on April 17, 2017, defendants Cooper and Wheeler took plaintiff's I.D.  (Id.)  Plaintiff wrote that at the reprimand in the program office, defendant Wheeler "altered statements" apparently to justify his actions.  (Id.)

The undersigned finds that the verified allegations in the second amended complaint do not meet plaintiff's burden of demonstrating "significant probative evidence" tending to support plaintiff's claim that defendant Cooper ordered the search.  Summers v. Teichert & Son, Inc., 127 F.3d 1150, 1152 (9th Cir. 1997) (in opposing summary judgment, the nonmoving party must introduce significant probative evidence tending to support the complaint).  Claim two makes two specific allegations against defendant Cooper:  thirteen days before the search, plaintiff submitted a CDCR Form 22 against defendant Cooper; and defendant Cooper supervised the defendants who performed the search.  These allegations are not significant probative evidence that defendant Cooper ordered the search.

Plaintiff's second amended complaint also alleges that his cell had recently been searched "uneventfully" by the third watch and that the defendants who conducted his search broke cables on his television and scattered his legal property.  These circumstances may suggest that the search was conducted for improper reasons.  However, these circumstances are not significant probative evidence that defendant Cooper ordered the search.

Considering the totality of the allegations in claim two, the undersigned finds that these allegations are not significant probative evidence that defendant Cooper ordered the search. While the allegations against defendant Cooper in claim two may have been sufficient to order service of claim two, Hishon v. King & Spalding, 467 U.S. 69, 2232 (1984) (court may dismiss complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations), the undersigned finds that at the summary judgment stage of these proceedings, these allegations do not meet plaintiff's summary judgment burden.

In his opposition, plaintiff appears to argue that evidence of other incidents of retaliation by defendant Cooper against plaintiff demonstrate that defendant Cooper ordered the April 30, 2017 cell search.  For example, plaintiff alleges that in 2020 defendant Cooper retaliated against plaintiff for "exercising my protected right" by allowing information to be placed in plaintiff's C-

29

1    file that the parole board could use to find plaintiff unsuitable for parole.[3]  (ECF No. 133 at 46.)

2    Plaintiff may also argue that the other incidents of retaliation alleged against defendant Cooper in

3    this action support an inference that defendant Cooper ordered the April 30, 2017 cell search.[4]

4            Evidence that defendant Cooper retaliated against plaintiff on other occasions is

5    inadmissible to show that defendant Cooper ordered the April 30, 2017 cell search.  Fed. R. Evid.

6    401(b)(1) ("Evidence of a crime, wrong, or other act is not admissible to prove a person's

7    character in order to show that on a particular occasion the person acted in accordance with the

8    character); Turley v. Todaro, 682 Fed.Appx. 502, 503-04 (7th Cir. Apr. 14, 2017) (upholding

9    district court decision rejecting plaintiff's argument "because it required an impermissible

10   inference:  Turley sought to use [inmate] Town's testimony 'to demonstrate just what Rule 404(b)

11   prohibits, that Defendants retaliated against Plaintiff because they previously retaliated against

12   Towns in a very similar manner and under similar circumstances.").

13           Accordingly, for the reasons discussed above, defendant Cooper should be granted

14   summary judgment as to claim two.

15           Defendants do not move for summary judgment as to defendants Armenta, Winkler,

16   Wheeler, J. Cantu as to the merits of claim two.  For the reasons stated herein, the undersigned

17   provides notice to plaintiff of the court's intention to sua sponte grant summary judgment in favor

18   of these defendants as to claim two.  See Norse v. City of Santa Cruz, 629 F.3d 966, 971-72 (9th

19   Cir. 2010) ("Sua sponte grants of summary judgment are only appropriate if the losing party has

20   reasonable notice that the sufficiency of his or her claim will be in issue.") (internal quotation

21   marks and citation omitted).

22           In the second amended complaint, plaintiff claims that on April 17, 2017, he filed a

23   grievance against defendants Cooper, Armenta, Winkler, Wheeler and J. Cantu.  Plaintiff alleges

24   _____

25   [3]   The court previously considered the issue of the information placed in plaintiff's C-file when
     addressing plaintiff's motion for sanctions and defendants' motion for terminating sanctions.
26   (ECF No. 116.)  The court denied both motions.  (ECF Nos. 116, 118.)

27   [4]   As discussed herein, the undersigned recommends that defendants be granted summary
     judgment on the merits of claims four and five.  Defendants did not move for summary judgment
28   as to the merits of claim three.

1  that in retaliation for filing this grievance, defendant Cooper ordered defendants Armenta,

2  Winkler, Wheeler and J. Cantu to conduct the April 30, 2017 cell search.  Thus, to succeed on

3  claim two as to defendants Armenta, Winkler, Wheeler and J. Cantu, plaintiff must demonstrate

4  that defendant Cooper ordered them to search plaintiff's cell.

5        As discussed above, plaintiff failed to present evidence from which a reasonable jury

6  could infer that defendant Cooper ordered the April 30, 2017 cell search.  Defendants Armenta,

7  Winkler, Wheeler and J. Cantu are entitled to summary judgment if plaintiff cannot demonstrate

8  that defendant Cooper ordered them to search plaintiff's cell.  In other words, even if defendants

9  Armenta, Winkler, Wheeler and J. Cantu searched plaintiff's cell on April 30, 2017, plaintiff must

10 still demonstrate that defendant Cooper ordered them to perform the search, as alleged in the

11 second amended complaint.

12       Accordingly, within fourteen days of the date of this order, plaintiff shall show cause why

13 the court should not sua sponte grant summary judgment in favor of defendants Armenta,

14 Winkler, Wheeler and J. Cantu as to the merits of claim two.

15       C.   Claim Four

16       As discussed above, in claim four plaintiff alleges that defendants Cooper, Walker and

17 Allen retaliated against plaintiff for filing the grievance alleged in claim three by placing mentally

18 unstable inmates in plaintiff's cell.  The grievance alleged in claim three is MCSP-15-01803.

19 (ECF No. 13 at 8.)

20       Defendants move for summary judgment as to claim four on the grounds that plaintiff

21 cannot establish that his filing MCSP-15-01803 caused defendants to allegedly place mentally

22 unstable inmates in his cell because plaintiff filed MCSP-15-01803 *after* defendants allegedly

23 placed the mentally ill inmates in plaintiff's cell.  In support of this argument, defendants cite

24 plaintiff's deposition at pp. 117-18.  (ECF No. 124-3 at 27.)  Plaintiff testified that he could not

25 remember the exact dates of the incidents involving mentally unstable inmates placed in his cell,

26 but he recalled that the "whole scenario happened a January, February, March, April period…"

27 (Plaintiff's deposition at 118-2-5.)  When asked what year these incidents occurred, plaintiff

28 testified, "I think we're talking 2016," but he was "not 100 percent sure."  (Plaintiff's deposition

1   at 118: 6-10.)  Plaintiff testified that the dates of the incidents were documented in the grievance

2   he filed.  (Id.)

3       As discussed above, plaintiff signed the original grievance alleging that defendant Walker

4   placed mentally unstable inmates in his cell, i.e., MCSP-15-01154, on March 5, 2015.  (ECF No.

5   124-5 at 19.)  Plaintiff signed the original grievance submitted in MCSP-15-01803 on August 4,

6   2015.  (ECF No. 124-5 at 37.)  Defendants contend that they could not have retaliated against

7   plaintiff for filing MCSP-15-01803 by placing mentally unstable inmates in his cell because the

8   mentally unstable inmates were allegedly put in plaintiff's cell before he filed MCSP-15-01803.

9       In his opposition, plaintiff does not dispute the dates alleged by defendants regarding

10  when the mentally unstable inmates were allegedly placed in his cell.

11      Defendants' undisputed evidence demonstrates that defendants could not have retaliated

12  against plaintiff for filing MCSP-15-01803 by allegedly placing mentally unstable inmates in his

13  cell because the mentally unstable inmates were allegedly placed in plaintiff's cell *before* plaintiff

14  filed the original grievance in MCSP-15-01803.  Therefore, plaintiff cannot show that his

15  protected conduct, i.e., submitting MCSP-15-01803, caused the alleged retaliation.  For these

16  reasons, defendants should be granted summary judgment as to claim four.

17      D.  Claim Five

18      As discussed above, in claim five plaintiff alleges that on February 8, 2018, defendants

19  Armenta and Cooper Claim issued a rules violation report falsely charging plaintiff with being

20  out of bounds in retaliation for plaintiff submitting a CDCR Form 22.

21      Defendants move for summary judgment as to claim five on the grounds that defendants

22  took no adverse action against plaintiff.  Defendants provide evidence that on February 8, 2018,

23  defendant Armenta issued plaintiff a Counseling Only Rules Violation Report for being out of

24  bounds.  (ECF No. 124-6 at 2.)  Although labeled as a Rules Violation Report, this report is

25  classified as "counseling only."  (Id. at 7.)  Counseling chronos are not adverse actions because

26  they are informational with no disciplinary effect.  Vallery v. Botkin, 2020 WL 7425343, at *7-8

27  (E.D. Cal. Dec. 18, 2020); Heilman v. Furster, 2018 WL 2588900, at *10-11 (C.D. Cal. May 1,

28  2018) (same).

1    In his opposition, plaintiff does not dispute defendants' argument that the counseling

2    chrono did not constitute an adverse action because it was informational with no disciplinary

3    effect.  Accordingly, defendants should be granted summary judgment as to claim five on the

4    grounds that plaintiff suffered no adverse action.

5    Defendants also move for summary judgment as to claim five on the grounds that plaintiff

6    has no evidence that defendant Cooper ordered defendant Armenta to file the counseling chrono.

7    The undersigned need not reach this issue because the counseling chrono did not constitute an

8    adverse action.

9    Defendants also argue that defendants Cooper and Armenta are entitled to qualified

10   immunity as to claim five.  To determine whether a government official is entitled to qualified

11   immunity, courts must consider (1) whether the official's conduct violated a constitutional right,

12   and (2) whether that right was "clearly established" at the time of the alleged misconduct.

13   Pearson v. Callahan, 555 U.S. 223, 232 (2009).

14   Because the undersigned finds that defendants did not violate plaintiff's constitutional

15   rights because plaintiff suffered no adverse action, the undersigned not further address the issue

16   of qualified immunity.

17       E.   New Claims Raised in Opposition

18   In the reply, defendants argue that plaintiff's opposition includes various allegations about

19   the defendants retaliating against him in other ways not mentioned in the operative complaint,

20   including destroying his television and radio, interfering with his access to his workplace,

21   programming, religious services and the mess hall.  (ECF No. 136 at 7.)  Defendants argue that

22   plaintiffs' opposition includes new factual allegations against defendants including that they

23   retaliated against him in June 2020, i.e., after he filed this action.  (Id.)

24   Plaintiff may not amend his complaint to include new claims of retaliation by way of his

25   opposition to defendants' summary judgment motion.  Pickern v. Pier 1 Imports (U.S.), Inc., 457

26   F.3d 963, 968-69 (9th Cir. 2006).  Accordingly, to the extent plaintiff's opposition raises new

27   claims for which he seeks relief, the undersigned will not address these new claims.

28   ////

Accordingly, IT IS HEREBY ORDERED that within fourteen days of the date of this order, plaintiff shall show cause why the court should not sua sponte grant summary judgment in favor of defendants Armenta, Winkler, Wheeler and J. Cantu as to the merits of claim two;

IT IS HEREBY RECOMMENDED that:

1.   Plaintiff's request for reconsideration of the June 11, 2019 order dismissing claim one, contained in his opposition to defendants' summary judgment motion, be denied;

2.   Defendants' summary judgment motion (ECF No. 124) on the grounds that plaintiff failed to administratively exhaust claim two be denied; defendants' motion for summary judgment be granted in all other respects.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  July 19, 2022

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

Mc560.sj